ESTATE OF JOHN J. LEIDY, DECEASED, Leon H. A. Pierson, Edward A. Pierson, Personal Representatives, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent LEIDY CHEMICALS CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Leidy v. Commissioner
Docket Nos. 2025-74, 2026-74.
United States Tax Court
T.C. Memo 1975-340; 1975 Tax Ct. Memo LEXIS 32; 34 T.C.M. (CCH) 1476; T.C.M. (RIA) 750340; November 13, 1975, Filed Carl F. Bauersfeld, for the petitioners. Robert K. Dowd, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, *34 Judge: In these consolidated cases, the respondent has determined the following deficiencies: Docket No.
Year
Amount
2025-74
1970
$ 2,920.68
2026-74
1970
20,688.11
One issue to be decided is whether medical expense payments by petitioner, Leidy Chemicals Corp., on behalf of its principal shareholder, John J. Leidy, now deceased, and his mother, Ida M. Leidy, were made pursuant to a "plan" qualifying for the tax treatment accorded by sections 105(b) and 105(e). [1]/ Closely related is an issue as to whether, in the case of Leidy Chemicals Corp., such payments are deductible compensation under section 162(a), or nondeductible constructive dividends under section 301(a). FINDINGS OF FACT John J. Leidy (hereinafter Leidy or decedent) died in October 1970. As legal representative of his estate, petitioner Edward A. Pierson, filed decedent's Federal income tax return for 1970 with the Internal Revenue Service Center, Philadelphia, Pennsylvania, using the calendar year, cash method of accounting. At the time *35 their petition was filed, these petitioners were legal residents of Baltimore, Maryland. Petitioner Leidy Chemicals Corporation (hereinafter Leidy Chemicals or the corporation) maintained its principal place of business in the same city. The corporation filed with the Internal Revenue Service Center, Philadelphia, Pennsylvania, its Federal income tax return for 1970 employing the calendar year, accrual method of accounting. Leidy Chemicals was organized as a corporation under the laws of Maryland on August 1, 1946, to engage in the distribution of industrial chemicals. For several years prior to that time, Leidy had operated the business as a sole proprietorship. His mother, Ida M. Leidy (sometimes hereinafter Mrs. Leidy), became involved in the business as his partner while he was in the military service during World War II. After the corporation was organized in 1946, Leidy and his mother were the principal owners of the corporation's stock. From 1956 until 1960, decedent owned 50 percent of the outstanding common stock and 5 percent of the outstanding preferred stock, and Mrs. Leidy owned the other 50 percent of the corporation's common stock. From 1960 until his death, decedent *36 owned all of the corporation's outstanding common stock and varying amounts of the preferred stock. At his death, decedent owned all the outstanding common and preferred stock of the corporation. Mrs. Leidy owned no common or preferred stock in the corporation after 1960. Leidy was quite active in the day-to-day operation of the corporation. Because of his aggressive business activities, he was primarily responsible for the corporation's financial success. Mrs. Leidy served as a vice president, director and consultant to the corporation. She was active in the formation of Leidy Chemicals, but in later years she seldom participated in the day-to-day operations of the business. At all relevant times, however, she received a salary from Leidy Chemicals as its vice president. Leidy was an energetic, vigorous person, playing golf and tennis regularly. He was quite preoccupied with his health, however, and he had regular physical examinations. In the last 3 months of 1956, he became notably breathless and his legs felt heavy when he exerted himself. In December 1956, Leidy was informed by his physician that he had a systolic murmur in his heart. At that time he was not considered to *37 be in any immediate danger of heart attack or death, but, on the advice of his physician, he reduced his athletic activity. In 1956, his physician was of the opinion that Leidy would suffer a gradual deterioration of his heart and that close medical supervision would be necessary. Leidy's heart condition gradually worsened until 1970, when he suffered a heart attack and died. In December 1956, approximately 4 days after Leidy was informed of his heart condition, the corporation by resolution of the board of directors, adopted a plan whereby all medical and hospital expenses of Leidy and his mother would be paid by the corporation for the calendar year 1957. No other employees of the corporation were covered by this plan. In January 1958, the corporation designated certain employees who would be covered by a health plan for that year, and in December 1958, the corporation adopted a resolution providing for medical expense coverage for all employees of the company who had 5 years of service. The plan as adopted by the December 1958 resolution was to be effective for all succeeding years, unless otherwise amended by the corporation. During 1961 through 1970, 21 to 40 employees each *38 year were covered by the plan. The coverage was limited to an amount not to exceed 1 percent of the employee's base annual salary. The 1-percent-of-salary limitation, however, did not apply to the president or vice president of the corporation, those positions being held by Leidy and his mother, respectively. They continued to receive reimbursement for the full amount of their hospital and medical expenses. Each year during the existence of the medical plan, employees received a letter from the company, outlining the coverage and explaining how an employee should apply for benefits. The plan was continued until 1972 when the corporation, having been purchased by outside interests, adopted a Blue Cross-Blue Shield plan for all of its employees. From 1961 through 1970 the corporation paid to its employees and deducted medical and hospital expenses in the total amount of $85,814.21. Of these amounts, Leidy individually received $60,693.99, approximately 71 percent of all medical expense payments during that period. In 1970 alone, Leidy received payments of $40,702.72 and Mrs. Leidy received $2,425. [2]/ Of this amount, respondent determined that $42,049 was paid as a dividend to *39 decedent and, consequently, was neither excludable from his gross income nor deductible by the corporation. [3]/ OPINION Petitioners contend that the amounts paid by Leidy Chemicals during 1970 for the medical care of Leidy and his mother were excludable from Leidy's gross income under section 105 and deductible by the corporation under section 162(a). Section 105(a) sets forth a general rule of includability in employees' gross income of amounts received as "accident or health insurance" where such amounts are attributable to the employer's contributions. Section 105(b) provides an exception, however, with respect to reimbursed medical expenses and allows a deduction for such amounts. Section 105(e) provides that amounts received under "an accident or health plan for employees" shall be treated *40 as amounts received through "accident or health insurance." [4]/ For the amounts received by Leidy during 1970 to be excludable from his gross income under these sections, petitioners must show two essential facts: (1) That a "plan" as such existed, and (2) that the "plan" was for the benefit of "employees" as opposed to Leidy Chemicals' shareholders. Samuel Levine,50 T.C. 422, 427 (1968); Alan B. Larkin,48 T.C. 629, 633 (1967), affd. 394 F.2d 494 (1st Cir. 1968). *41 We think petitioners have shown that a "plan" for health insurance did exist. The original corporate resolution of December 1956 and the later amendments in 1958, which provided for medical expense payments for qualified employees to the extent of 1 percent of their gross compensation, was sufficient to make that showing. The publicity given the plan among Leidy's employees and the regular payments under its provisions confirm that Leidy Chemicals maintained a health plan for its employees. See section 1.105-5(a), Income Tax Regs.; cf. John C. Lang,41 T.C. 352, 355-357 (1963); Estate of Leo P. Kaufman,35 T.C. 663 (1961), affd. 300 F. 2d 128 (6th Cir. 1962). The mere existence of a plan, however, is not sufficient in and of itself to qualify payments for exclusion under section 105. The plan must be for employees and must not be a device whereby the corporation distributes benefits to its shareholders as such. Alan B. Larkin,supra, at 633. Both the regulations [5]/ and the legislative history of *42 section 105 indicate that plans may discriminate among employees in awarding benefits, but there must be some other rational basis for the discrimination than ownership of the business. Samuel Levine,supra at 427. We do not think that the payments made to decedent by Leidy Chemicals were made pursuant to a plan meeting this requirement. *43 The plan originally adopted by Leidy Chemicals covered only Leidy and his mother. At that time, they were the only shareholders of the corporation. The plan was subsequently amended to provide benefits for all employees with 5 years of service in the company. However, Leidy and his mother continued to have unlimited coverage while the payments to other eligible employees could not exceed 1 percent of their salaries. Indeed, during 1961 through 1970, Leidy and his mother received over 70 percent of all the medical benefits paid even though the number of covered employees during that period ranged from 21 to 40. No rational basis has been shown for this disparity in coverage apart from Leidy's ownership of substantially all of the corporation's stock. Samuel Levine,supra at 427. The original plan for Leidy and his mother, moreover, was adopted in December 1956, only a few days after Leidy had visited his doctor and learned that he suffered from a heart condition that would require increasing medical care. It strains the imagination to think that the adoption of the original plan and Leidy's learning that he had a serious heart condition were merely coincidental. Leidy's *44 mother was growing old and could also expect to need increasing medical care. The inference is clear that the original plan was merely a device whereby the corporate earnings would be used to meet the anticipated medical needs of Leidy and his mother. The subsequent amendments did not convert the original corporate resolution, which allowed unlimited medical payments to Leidy and his mother, into a "plan for employees" within the meaning of section 105(e). At all times from 1956 to the date of his death, Leidy was permitted to use the corporation's earnings without limit to meet his and his mother's medical needs. No other officer or employee was ever given similar treatment. Such disparity in the extent of the plan's coverage and such use of the corporation's funds demonstrates that the payments to Leidy and his mother were not made pursuant to a plan for employees but were constructive dividends to Leidy as a shareholder. Alan B. Larkin,supra; cf. John L. Ashby,50 T.C. 409 (1968). [6]/ *45 Since the medical payments in issue were constructive dividends to Leidy, they are not deductible by Leidy Chemicals as ordinary or necessary business expenses under section 162(a). Leidy Chemicals has neither alleged nor argued that the medical payments represented additional compensation for Leidy's services for which deductions might be allowable to the corporation under section 162(a)(1). There is no indication that the payment of medical benefits of $42,049 to the Leidys in 1970 was related to the performance of services. Indeed, all of Mrs. Leidy's medical expenses were reimbursable to her, the same as to decedent, even though she performed only nominal, if any, services. The mere fact that payments were made to Leidy, who was an employee as well as a shareholder, does not permit us to regard them as deductible compensation, because there is no showing that his salary plus the payments constituted "reasonable" compensation for his services within the meaning of section 162(a)(1). To reflect the foregoing, Decisions will be entered for the respondent.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.
2. /↩ Mrs. Leidy no longer owned any stock of the corporation, but respondent determined that the payments to her so benefited decedent as to constitute a dividend. 3. / The corporation had sufficient earnings and profits in 1970 to cover all the disputed amounts as dividends.↩
4. /SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) Amounts Attributable to Employer Contributions.--Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. (b) Amounts Expended for Medical Care.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include amounts referred to in subsection (a) if such amounts are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care (as defined in section 213(e)) of the taxpayer, his spouse, and his dependents (as defined in section 152). * * *
(e) Accident and Health Plans.--For purposes of this section and section 104-- (1) amounts received under an accident or health plan for employees, and * * *
shall be treated as amounts received through accident or health insurance.↩
5. /Sec. 1.105-5 Accident and health plans. (a) In general.Sections 104(a)(3) and 105(b), (c), and (d) exclude from gross income certain amounts received through accident or health insurance. Section 105(e) provides that for purposes of sections 104 and 105↩ amounts received through an accident or health plan for employees, and amounts received from a sickness and disability fund for employees maintained under the law of a State, a Territory, or the District of Columbia, shall be treated as amounts received through accident or health insurance. In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness. A plan may cover one or more employees, and there may be different plans for different employees or classes of employees. An accident or health plan may be either insured or noninsured, and it is not necessary that the plan be in writing or that the employee's rights to benefits under the plan be enforceable. However, if the employee's rights are not enforceable, an amount will be deemed to be received under a plan only if, on the date the employee became sick or injured, the employee was covered by a plan (or a program, policy, or custom having the effect of a plan) providing for the payment of amounts to the employee in the event of personal injuries or sickness, and notice or knowledge of such plan was reasonably available to the employee. It is immaterial who makes payment of the benefits provided by the plan. For example, payment may be made by the employer, a welfare fund, a State sickness or disability benefits fund, an association of employers or employees, or by an insurance company.
6. / As to the determination of a constructive dividend to Leidy for the amounts of corporate funds used to cover Mrs. Leidy's medical expenses, see Hardin v. United States,461 F.2d 865, 872 (5th Cir. 1972), wherein the court stated: Likewise, under the familiar doctrine of Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, "it is of little consequence that [Taxpayer] personally received no money from the transaction, for it is the power to dispose of income and the exercise of that power that determines whether taxable income has been received." Sammons v. United States, 5 Cir., 1970, 433 F.2d 728, 732; Floyd v. Scofield, 5 Cir., 1952, 193 F.2d 594, 596↩. The fact that Mrs. Hardin was not a shareholder of the corporation, and that the payments were not made in satisfaction of a legal obligation, means nothing if their only purpose was to satisfy what Taxpayer obviously felt to be a personal or moral responsibility for his sister-in-law's welfare rather than a legitimate business purpose.